IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHICAGO INSURANCE COMPANY,
INTERSTATE INSURANCE GROUP,

Plaintiff,

-vs-

JAMES A. CAPWILL, et al.,

Defendant.

Case No. 3:01 CV 2588

MEMORANDUM OPINION

KATZ, J.

This cause is before the Court on the motions of plaintiff Chicago Insurance Company ("CIC") to enter summary judgment in its favor and against defendants James A. Capwill, CWN Group, Inc. ("CWN"), Viatical Escrow Services, LLC ("VES"), Capwill & Company, and Victor Javitch ("Javitch") (the Court will refer to these various entities collectively as "Capwill"), on Counts I, II, III, IV, and VI of its Second Amended Complaint. (Docs. 151, 154). CIC asks this Court to hold that Chicago Accountants Professional Liability Insurance Policy No. ADV-2006167, issued to Capwill, CWN, VES, and Capwill & Company, for the period March 20, 1999, to March 20, 2000, was void *ab initio* and may be rescinded, on the ground that Capwill has failed to comply with a warranty provision contained therein. (Doc. 151). CIC also asks this Court to find that it had no duty to defend or indemnify Capwill under the policy. (Doc. 154). Finally, CIC asks this Court to strike the report and affidavit of defense expert Glenn Hubbard, and exclude his testimony from trial. (Doc. 192). The Court will deny both of CIC's summary judgment motions, as well as CIC's motion for oral argument on these motions (Doc. 194), grant CIC's motion to strike Hubbard's report and affidavit, and deny CIC's motion to exclude Hubbard's testimony from trial.

**I. Background**

CIC issued three accountants professional liability policies, all numbered ADV-2006167, to James Capwill, CWN, VES and Capwill & Company for the periods March 20, 1997 to March 20, 1998, March 20, 1998 to March 20, 1999 and March 20, 1999 to March 20, 2000. Capwill originally signed an application seeking professional liability insurance from CIC on March 18, 1997. That application contained the following questions:

> 3. Within the past five (5) years has the applicant firm or any partner, officer, owner or employee:
>    a. Had his/her accounting license or authority to practice accounting revoked?
>    b. Been subject to disciplinary action by an state board of accounting, AICPA, or state society?
>    c. Been subject to any fine, reprimand or criminal penalty related to the performance of professional services?
>
> 13. Having inquired of all officers, partners, owners and professional employees, does applicant firm perform any duties as trustee?
>
> 14. Does applicant firm have any discretionary authority to handle client funds other than as a trustee function?
>
> 16. Does applicant firm or any partner, owner, officer or professional employee:
>    a. Receive commissions, fees, reciprocity, or revenue for sale, promotion or recommendation of investments or tax shelters?
>    b. Organize, arrange or procure investments, real estate or tax shelters?
>    c. Participate in the management of any investment partnership, limited partnership or other investment venture?
>
> 19.
>    b. Having inquired of all partners, officers, owners and employed accountants, are there any circumstances which may result in a claim being made against the firm, its predecessors, or any current or past partner, officer or owner?

Capwill answered “no” to all of these questions. He also described his business as 25% bookkeeping, 5% review, 20% compilation, 10% personal tax engagements, 10% corporate tax

engagements and 30% management advisory services. Although the application requested a further description of the management advisory services, Capwill did not provide that information. He signed the application beneath an averment that stated:

> I DECLARE THAT THE INFORMATION SUBMITTED HEREIN IS TRUE TO THE BEST OF MY KNOWLEDGE AND BECOMES A PART OF MY PROFESSIONAL LIABILITY APPLICATION. I UNDERSTAND THAT AN INCORRECT OR INCOMPLETE STATEMENT COULD VOID MY PROTECTION.

After receiving the application, CIC sought additional information from Capwill regarding the nature of his new business. After receiving such additional information, CIC issued Accountants Professional Liability Insurance Policy (Certificate) No. ADV-2006167 for the period March 20, 1997 to March 20, 1998. The named insureds on the policy were CWN d/b/a Capwill & Co., VES, and James Capwill. The policy contained the following language:

> Declarations and Applications: By acceptance of this policy, the insured agrees that the statements, Declarations and application are his agreements and representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance.

On March 24, 1998, Capwill signed a renewal application for continuation of the CIC coverage. That renewal application contained the following questions:

> 9.
> a. Has the applicant firm performed any Accounting Services during the past policy term in connection with clients who are engaged in the issuance, offering, registration or sale of securities or bonds?
> b. Has the applicant firm or any partner, officer, owner or employee within the past policy term provided forecasts, projections, etc. to sellers or promoters of investments to inclusion in their prospectus or sales literature.
>
> 10.
> a. Having inquired of all partners, officers and professional employees, are there any circumstances which may result in a

claim being made against the firm or its predecessors other than as previously recorded.

13. Has the applicant firm or any partner, officer, owner or employee, within the past policy term:
    a. Received commissions, fees, reciprocity or revenue for sale, promotion or recommendations of investments or tax shelters?
    b. Organized, arranged or procured investments, real estate or tax shelters?
    c. Participated in the management of any investment partnership, limited partnership or owner investment venture?
    d. Made recommendations as the sale or purchase of specific stocks, bonds or other securities?
14. During the past year has any member of the applicant firm:
    a. Had his/her license or authority to practice accounting revoked?
    b. Been subject to disciplinary action by any State Board of Accounting, AICPA or State Society?
    c. Been subject to any fine, reprimand or criminal penalty related to performance of professional services?

Capwill answered "no" to each of these questions. He included the same percentages as to the various services he provided that were included in the original application, and he again signed his name under the same averment contained in the original application. CIC then issued Accountants Professional Liability Insurance Policy (Certificate) No. ADV-2006167 for the period March 20, 1998 to March 20, 1999. That policy contained the same "Declarations and Applications" provision as the earlier policy.

On December 27, 1998, Capwill signed another renewal application seeking continued coverage from CIC. That application repeated the questions contained in the earlier renewal application. Capwill again answered "no" to these questions. He included the same percentages for the various services contained in the original application and signed the application under the same averment contained in the earlier applications. CIC's agent, Herbert H. Landy Insurance Agency, Inc., then issued the renewal policy in dispute here: Chicago Accountants Professional Liability Insurance Policy (Certificate) No. ADV-2006167 for the period March 20, 1999 to

March 20, 2000. That policy also contained the same “Declarations and Applications” provision found in the earlier policies. CIC contends that Capwill made false statements on each of his various applications for professional liability insurance.

In 1999, Liberte Capital Group (“Liberte”) and Alpha Capital Group (“Alpha”), two viatical funding companies that contracted with the Insured Defendants to provide professional services in 1997 and 1998, respectively, filed suit in federal court asserting a number of claims against Capwill. See *Liberte, et al. v. Capwill, et al.*, Case No. 5:99 CV 818. The *Liberte* Court appointed a Receiver, who immediately filed a claim against the Insured Defendants professional liability policy. The *Liberte* Court also enjoined new claims against the Receiver, Capwill, and the Defendant Receivership entities; however, in June 2001, the Court lifted the injunction for the limited purpose of permitting Liberte and Alpha to file negligence claims against the Capwill entities in state Court. (Liberte Doc. No. 1107). Accordingly, in 2001, Alpha and Liberte filed complaints in state court against the Insured Defendants (and the Receiver) alleging only negligence claims. See *Alpha, et. al v. Capwill, et al.*, No. 443757 (Court of Common Pleas for Cuyahoga County, Ohio).

Defendants sought insurance coverage under the professional liability policy purchased from CIC for the claims against Capwill raised in the four complaints. CIC never defended the claims. Instead, asserting that it has no duty to defend or indemnify under the policy at issue, CIC filed its Complaint for Declaratory Judgment in this case on November 15, 2001.

**II. Standard of Review**

Summary judgment is appropriate where “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

***A. Plaintiff's Motion for Summary Judgment on Count I***

The issue presented by CIC's motion on Count I of its complaint (Doc. 151) is whether Capwill's statements on his applications for professional liability insurance constituted "representations" or "warranties." The distinction has been summarized thusly:

> The consequences of a misstatement of fact by an insured are entirely different, depending on whether the statement is a warranty or a representation. If the statement is a warranty, a misstatement of fact voids the policy *ab initio*. However, if the statement is a representation, a misstatement by the insured will render the policy voidable, if it is fraudulently made and the fact is material to the risk, but it does not void the policy *ab initio*.

*Allstate Insurance Co. v. Boggs*, 27 Ohio St. 216, 218-219 (1971).

The Supreme Court of Ohio has defined "warranty" as follows: "A warranty is a statement, description or undertaking by the insured of a material fact either appearing on the face of the policy or in another instrument specifically incorporated in the policy." *Id*. at 219. Furthermore, "[t]he mere fact that a policy of insurance refers to the application does not make such application a part of the policy. In order to have an incorporation by reference in an insurance policy, it must be done in unequivocal language on the face of the policy." *Boggs* at 220. In making this inquiry, the language in standard-form insurance policies is "to be construed strictly against the insurer, and liberally in favor of the insured." *Id*. at 219.

It is clear that the language in the CIC policy issued to Capwill does not meet this test. The policy includes the following language:

> Declarations and Applications: By acceptance of this policy, the insured agrees that the statements, Declarations and application are his agreements and representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance.

This is not enough to "incorporate" the application into the insurance policy. An observation of the *Boggs* Court applies equally well to this case: "Although the policy provides generally that, 'the named insured agrees that the statements in the declarations and in the application for this policy are his agreements and representations, that this policy is issued in reliance upon the truth of such representations,' nowhere is the application, as such, incorporated in and made a part of the policy." *Boggs*, 27 Ohio St. at 220.

So too, the clause providing "that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance" is ambiguous. For one thing, by referring only to Capwill's "agreements" with CIC, this language might be taken to

exclude the "representations" made by Capwill on his insurance application. For another, this language may well have been intended merely as a standard-form integration clause, providing that the insurance policy supersedes any informal understandings and oral agreements relating to the subject matter it covers. In any event, it does not satisfy the requirement of the *Boggs* Court that the incorporating language appear "in unequivocal language on the face of the policy." *Boggs*, 27 Ohio St. 216, 220.

Since Capwill's statements on the application were "representations," any misstatement in the application renders the policy voidable, "if it is fraudulently made and the fact is material to the risk". *Boggs* at 219. Yet CIC does not even argue that Capwill's statements on his insurance applications, even if not warranties, were nonetheless voidable because they constitute misrepresentations that were fraudulent and material. Rather, CIC argues that it is entitled to summary judgment on the issue of rescission on the sole ground that Capwill's statements were "warranties" and thus that the policy was void *ab initio*.[1] Because of this Court's finding that Capwill's statements on his insurance applications do not constitute warranties under Ohio law, therefore, CIC's motion for summary judgment as to Count I is denied.

***B. Plaintiff's Motion for Summary Judgment on Counts II, III, IV, and VI***

Plaintiff also seeks summary judgment as to Counts II, III, IV, and VI of its complaint, on the ground that the claims asserted against the Defendants are excluded from the insurance policy, and, therefore, that it has no duty to defend or indemnify Defendants in these suits.

In the present case, the insurance policy issued to Capwill promised that:

---

1

Specifically, Plaintiff has not attempted to argue that Capwill's representations on his insurance application were "fraudulent." See Reply Br. of Plaintiff (Doc. 193), at 4.

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Claims first made against the Insured and reported to the Company during the olicy Period or Extended Reporting Period, as applicable, arising out of any act, error, omission or Personal Injury in the rendering of or failure to render Professional Services by an Insured covered under this policy.

The insurance policy also provided that "[CIC] shall have the right and duty to defend any suit against the Insured seeking Damages to which this insurance applies even if any of the allegations of the suit are groundless, false, or fraudulent." Additionally, the policy contained several "exclusions", stating that the policy did not apply to claims:

> B. Arising out of any dishonest, fraudulent, criminal or malicious act, or omission, or deliberate misrepresentation (including, but not limited to, actual or alleged violations of state or federal antitrust, price-fixing, restraint of trade, copyright or deceptive trade practice laws, rules or regulations) committed by, at the direction of or with the knowledge of any insured; however the insured shall be reimbursed for all Claim Expenses which would have been collectible under this policy if it is determined by judgment that the Insured did not commit a dishonest, fraudulent, criminal or malicious act, or omission, or deliberate misrepresentation.
>
> C. Arising out of the insured gaining, in fact, any personal profit or advantage to which the insured was not legally entitled, including misappropriation, commingling or defalcation of funds or other property.
>
> G. Arising out of the performance or non-performance of any specific security, real estate investment or other investment upon which any Insured has based a recommendation, representation or opinion to buy or sell such security or investment or which any Insured, acting on behalf of another, has bought, sold or otherwise disposed of such security or investment.

CIC contends that it is entitled to summary judgment on the ground that the claims against Capwill fall into one of the several exclusions in the policy coverage.

"Under Ohio law, whether an insurer has a duty to defend an action against an insured is initially determined by the scope of the pleadings," *M/G Transport Services, Inc. v. Water Quality Ins. Syndicate*, 234 F.3d 974, 977 (6th Cir. 2000), and "[w]here the allegations state a claim that

falls either potentially or arguably within the liability insurance coverage, the insurer must defend the insured in the action." *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 159 (2003).

Furthermore,

> Where the insurer represents to its insured that it will undertake the defense of any claim asserting injury within coverage, even where the claim is false or fraudulent, the duty to defend may arise solely from the allegations of the underlying complaint, regardless of the true facts as they are known to the insurer.

*Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 114 (1987).

CIC's burden, then, is to show that *none* of the claims asserted in the various suits brought against Capwill are even *arguably* within the coverage provided by the insurance policy. In making this showing, furthermore, CIC must rely on the complaints filed in these cases themselves, and not the "true facts as they are known to the insurer," for the policy contained language agreeing to accept Capwill's defense of even false or fraudulent claims.[2] This a high burden, and CIC has failed to meet it in this case.

Each of the lawsuits brought against Capwill included free-standing professional negligence claims that arguably fell within the policy coverage, and CIC was thus obliged to take on their defense. Liberte's 1999 federal complaint alleged breach of contract and breach of fiduciary duty due to Capwill's wrongful transfers of escrowed funds; such a "wrongful" transfer would not have required proof of intentional wrongdoing, but only negligence. See *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180 (1984) (if "there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the

---

[2] Thus, this Court declines CIC's invitation to rely on findings made in support of the appointment of a receiver and a preliminary injunction in the civil suits against Capwill, and Capwill's criminal indictments.

defense of the claim."); cf. *Strock v. Presnell*, 38 Ohio St.3d 207, 216 (1988) ("A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care."). Even if the Liberte complaint did not state a negligence claim, however, Alpha's intervening complaint unquestionably did include professional negligence claims, see Doc. 155, Exh. J, paragraphs 32-35, as do the Alpha and Liberte complaints filed in state court in 2001.[3] That is enough, for the duty to defend can "attach at some later stage in the litigation." *Willoughby Hills* at 179 (1984).

This Court declines CIC's invitation to construe these free-standing professional negligence claims as merely derivative of claims of intentional conduct, and find that all of the negligence claims in these suits really refer to acts of intentional graft and fraud. Indeed, the complaints filed in the 2001 state court actions allege *only* damages resulting from professional negligence, and recovery on the professional negligence count in Alpha's intervening complaint in the 1999 federal suit would not have required proof of any dishonest, fraudulent, or criminal conduct on Capwill's part. That is enough to bring the claims against Capwill "arguably or potentially" within Capwill's insurance coverage, *Willoughby Hills* at 180, and CIC is therefore not entitled to avoid its obligation to defend Capwill on the ground that all of the conduct at issue

---

3 After Liberte and Alpha filed their federal complaints in 1999, all additional claims against Capwill were stayed by the Court. The Court lifted its stay in June 2001 to allow Liberte and Alpha to file their state court complaints. CIC now contends that the 2001 state court actions were not "made and reported" during the policy period, which ended in 2000. But because the 2001 actions could not have been filed within the policy period, due to the order preventing Alpha and Liberte from filing additional claims, these claims "relate back" to the original 1999 suit and thus are covered under the policy.

in the complaints constitute "dishonest, fraudulent, criminal or malicious" acts, profiteering,[4] or loss known to the insured at the time he applied for the insurance policy.

Under Ohio law, an insurer's duty to indemnify "is separate and distinct from its duty to defend." *M/G Transport*, 234 F.3d 974, 979. Unlike the duty to defend, "[t]he duty to indemnify arises from the conclusive facts and resulting judgment." *Pilkington North America, Inc. v. Travelers Casualty & Surety Co.*, 112 Ohio St.3d 482, 487 (2006). In the present case, CIC fails to offer proof of any judgment on the negligence claims asserted against Capwill, as none has yet occurred. Therefore, CIC is not entitled to summary judgment on the ground that it has no duty to indemnify Capwill.

***C. Plaintiff's Motion to Strike/Exclude Defense Expert Glenn Hubbard***

Finally, Plaintiff moves to strike the report and affidavit of defense expert Glenn Hubbard, and exclude his testimony at trial.

On July 9, 2007, this Court permitted the defendants to file additional discovery requests for the purposes of responding to CIC's summary judgment motions. (Doc. 148). In their response to CIC's motions for summary judgment, defendants attached an affidavit from Glenn Hubbard, purportedly an expert in insurance underwriting, even though defendants had never requested leave to disclose another expert, and even though the limited discovery period authorized by this Court for the purpose of responding to CIC's motions had passed. (Doc. 167). Additionally, this Court did not find Hubbard's report or affidavit relevant to the issues presented by CIC's

---

4 Indeed, there has simply been no final adjudication that Capwill gained "in fact, any personal profit or advantage to which [he] was not legally entitled," as is required for the insurer to invoke the protection of this sort of a clause under Ohio law. See *Am. Chem. Soc. v. Leadscope, Inc.*, 2005 WL 1220746 (Ohio App. 10 Dist. May 24, 2005).

summary judgment motion. Therefore, CIC's motion to strike Hubbard's report and affidavit is granted. See *Toth v. Grand Trunk Railroad*, 306 F.3d 335, 343 (6th Cir. 2002). If defendants wish to rely on Hubbard's testimony at trial (or that of any as-yet undisclosed expert witness), they must first request this Court's leave. Since defendants have not yet evinced an intention to rely on Hubbard's testimony at trial, the Court will deny CIC's motion to exclude Hubbard's testimony at trial on this matter as premature.

**IV. Conclusion**

For the reasons set forth above, the Court denies both of CIC's summary judgment motions (Docs. 151, 154), as well as CIC's motion for oral argument on these motions (Doc. 194), grant CIC's motion to strike Hubbard's report and affidavit, and deny CIC's motion to exclude Hubbard's testimony from trial. (Doc. 192).

S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE